# In the United States Court of Federal Claims

No. 26-538
Filed Under Seal: October 2, 2026
Reissued: October 15, 2026*

| | |
|---|---|
| MANUS MEDICAL, LLC, | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

*Daniel J. Figuenick, III*, PilieroMazza PLLC, Washington, D.C., for plaintiff. With him on the briefs were *Jonathan T. Williams*, *Eric A. Valle*, *Abigail Finan*, and *Adel K. H. Mansour*.

*Yariv S. Pierce*, Trial Attorney, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., for defendant. With him on the briefs were *Natica C. Neely*, Acting Deputy Chief Counsel, United States Department of Veterans Affairs, and *Barton B. Evans*, Procurement Attorney, United States Department of Veterans Affairs.

## ORDER AND OPINION

***SMITH*, Senior Judge**

This case concerns the Department of Veterans Affairs ("the VA") procurement of "Custom Sterile Procedure Packs and associated services" for thirty-five VA medical facilities. *See* Admin. R. ("AR") Tab 113, AR6862. Plaintiff Manus Medical, LLC ("Manus") brings this pre-award bid protest to challenge the VA's use of Lowest Price Technically Acceptable ("LPTA") procedures for the solicitation. *See* First Am. Compl. ¶ 1, ECF No. 23. Before the Court are the parties' cross-motions for judgment on the administrative record ("MJAR"). *See* Pl.s' MJAR, ECF No. 22-1; Def.'s Cross-MJAR, ECF No. 29. Manus contends that the solicitation does not meet the requirements to use LPTA and its use is prejudicial to Manus. *See* Pl.'s MJAR at 1. Manus requests that the Court enjoin the VA from using LPTA. *Id.* For the foregoing reasons, the Court **GRANTS** Manus's MJAR, ECF No. 22, and **DENIES** defendant's cross-MJAR, ECF No. 29.

---

* An unredacted version of this opinion was filed under seal on October 2, 2026. The parties proposed redactions, which the Court adopts only in part owing to the "presumption of public access to judicial records." *Allied Tech. Grp., Inc. v. United States*, 94 Fed. Cl. 16, 23 n.1 (2010) (quoting *Baystate Techs., Inc. v. Bowers*, 283 Fed. App'x 808, 810 (Fed. Cir. 2008)).

## I. BACKGROUND

### A. The Custom Sterile Procedure Packs Solicitation

Manus is a service-disabled, veteran-owned small business ("SDVOSB"). Tab 121, AR7770–72. Since 2021, the VA has awarded the bridge contracts for custom sterile packs to Manus under contract no. 36C77623D0002. *See* Pl.'s MJAR at 8; Decl. of [redacted] ¶¶ 2–3, ECF No. 1-4.

On January 13, 2025, the VA issued solicitation 36C77625R0017 to award a one-time firm fixed-price indefinite delivery indefinite quantity ("IDIQ") contract to provide Custom Sterile Procedure Packs and associated services for VA Medical Centers located in Veteran Integrated Service Networks ("VISNs") 5, 9, 10, 12, 15, 16, and 23. *See* Tab 80, AR3080, AR3084. The contract's maximum value is $98,500,000.00. *Id.* at AR3084. The initial solicitation envisioned a performance period of five years, starting with a transition period from May 1, 2025 to August 30, 2025. *Id.* After the transition period, five pricing periods would follow beginning August 31, 2025, and ending April 30, 2029. *See id.* at AR3085. Amendment 7 to the solicitation envisioned annual performance periods from August 2, 2026 through July 31, 2031. Tab 113, AR6862.

The agency determined it would use LPTA procedure for the award. Tab 80, AR3160. Offers would be evaluated under the following factors: (1) price, (2) technical, and (3) experience. For factor 1, offerors' prices would be evaluated by "multiplying the quantities for each line item by the proposed unit price . . . . then add[ing] the total of all line items to reach a sum." *Id.* at AR3161.

Factor 2 lists six subfactors. *Id.* at AR3162–63. All subfactors will be rated "acceptable" or "unacceptable" based on whether the proposal meets the requirements of the solicitation. *Id.* at AR3162. Factor 2(a) requires that offerors provide draft plans demonstrating how the offeror would transition each VISN within 120 days of the contract award. *Id.* The solicitation defines the transition as: "all bills of materials are finalized, packs manufactured, sterilized, are at quality/quantity levels to be ordered, and are available for delivery by the 121st day after the contract award/effective date as noted in sections 10.2, 10.3[], and 10.4[] of the SOW." *Id.* These plans must include a project management plan which demonstrates significant milestones so that the materials are ready for order and delivery by day 121. *Id.*

Factor 2(b) requires offerors to demonstrate how they "will achieve the implementation of a fully functioning web-based system." *Id.* The system's capabilities "must include Tracking Backorders (section 6.8.), Inventory management (section 10.), and Reporting Requirements (section 15.)." *Id.* The web-based system must "provide for easy identification of component, product utilization, latex, sterilization requirements, country of origin information, and VA standardization information." *Id.* at AR3098.

Factor 2(c) requires an offeror to demonstrate how it "will achieve the implementation of a fully Electronic Data Interchange ("EDI") in accordance with SOW section 14.2." *Id.* The EDI must be able to "process EDI orders and acknowledge orders in accordance with [American National Standards Institute] ANSI ASC X.12M Supply Chain Standard Transaction sets." *Id.* at AR3099.

Factor 2(d) requires offerors to provide three different non-sterile sample packs from each category listed in the solicitation. *Id.* at AR3162. Factor 2(e) requires that offerors provide certain certifications and registrations from their assembly and sterilization facilities. *Id.*

Factor 2(f) required that offerors provide a small business subcontracting plan in accordance with FAR 52.219-9 and Veterans Affairs Acquisition Regulation ("VAAR") 852.219-70. AR3162. Offers that failed to meet the subcontracting goals required justifications, which would be "evaluated for reasonableness." *Id.* Amendment 11 to the solicitation removed the subcontracting plan as a technical evaluation subfactor on July 28, 2026. *See* Notice, ECF No. 35; Tab 156, AR9496. However, offerors must still submit a subcontracting plan, that is compliant with FAR 52.219-9 and "VAAM M819.704-70." Tab 156, AR9497. Small business offerors are exempt from the subcontracting plan requirement. *Id.*

Finally, factor 3, experience, requires offerors to provide two contracts performed within the last five years in which the offeror supported at least twenty medical facilities and provided at least 100 different custom pack configurations. Tab 80, AR3163.

### B. Lowest Price Technically Acceptable Procurement Decision

Lowest price technically acceptable procurement procedures are generally disfavored for government contracts.[1] To use LPTA procedures, agencies must meet six criteria:

> (1) The agency can comprehensively and clearly describe the minimum requirements in terms of performance objectives, measures, and standards that will be used to determine the acceptability of offers;
>
> (2) The agency would realize no, or minimal, value from a proposal that exceeds the minimum technical or performance requirements;
>
> (3) The agency believes the technical proposals will require no, or minimal subjective judgment by the source selection authority as to the desirability of one offeror's proposal versus a competing proposal;
>
> (4) The agency has a high degree of confidence that reviewing the technical proposals of all offerors would not result in the identification of characteristics that could provide value or benefit to the agency;
>
> (5) The agency determined that the lowest price reflects the total cost, including operation and support, of the product(s) or service(s) being acquired; and

---

[1] "It shall be the policy of the United States Government to avoid using lowest price technically acceptable source selection criteria in circumstances that would deny the Government the benefits of cost and technical tradeoffs in the source selection process." John S. McCain National Defense Authorization Act, Pub. L. No. 115-232, § 880(a), 132 Stat. 1636, 1909 (2018) (codified at 41 U.S.C. § 3701).

> (6) The contracting officer documents the contract file describing the circumstances that justify the use of the lowest price technically acceptable source selection process.

*Id.* at §880(b)(1)–(6); FAR 15.101-2(c)(1)–(6).

On May 30, 2024, the contracting officer ("CO") for the solicitation signed off on LPTA procedures. Tab 69, AR3011. The VA's justification found LPTA "evaluation criteria is the best evaluation process to use due to the Agency:" and then states, nearly word-for-word, FAR 15.101(2)(c)(1)–(5).[2] *Id.* at 3010. The CO later elaborated on the VA's decision to use LPTA procedures but only assessed LPTA procedures regarding the custom sterile packs, not the solicitation's technical subfactors. *See* Tab 105, AR5771–72.

## II. PROCEDURAL HISTORY

On April 10, 2026, Manus filed suit in this Court. *See* Compl., ECF No. 1. The government filed the administrative record on May 20, 2026. *See* ECF No. 21. Manus then filed its first amended complaint and motion for judgment on the administrative record. *See* ECF Nos. 22, 23. Following Manus's opening brief, defendant stayed the award of the contract until October 2, 2026. *See* Mot. to Amend. Sched., ECF No. 26. The government then filed its cross-MJAR and response. *See* ECF No. 29. Plaintiff filed its response to the cross-MJAR and reply, then defendant timely filed its reply. *See* ECF Nos. 39, 40.

## III. JURISDICTION AND STANDARD OF REVIEW

### A. Motions for Judgment on the Administrative Record

Parties may bring motions for judgment on the administrative record under Rules of the Court of Federal Claims ("RCFC") 52.1. In a motion for judgment on the administrative record, a court must "make factual findings from the record evidence as if it were conducting a trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1353–54 (Fed. Cir. 2005). Challenges brought under 28 U.S.C. § 1491(b)(1) are reviewed under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1350–51 (Fed. Cir. 2004).

### B. Bid Protests

The Tucker Act provides the Court of Federal Claims jurisdiction over bid protests. 28 U.S.C. § 1491(b)(1). *See also Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1362–63 (Fed. Cir. 2009) (holding § 1491(b)(1) "specifically confers jurisdiction on the Court of Federal Claims to hear pre-award bid protests").

---

[2] Addressing FAR 15.101-2(c)(5), the VA determined [redacted] Tab 69, AR3010 (emphasis added). This is the VA's only significant addition or deviation from the statutory language.

A court may set aside an agency decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Oak Grove Techs., LLC v. United States*, 116 F.4th 1364, 1374 (Fed. Cir. 2024) (quoting 5 U.S.C. § 706(2)(A)). Therefore, the Court "may overturn a challenged agency decision if it 'lacked a rational basis' or 'involved a violation of regulation or procedure.'" *Id.* (quoting *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009)).

A court adjudicating a "challenge on the first ground must determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion" whereas in evaluating a challenge on the second ground, the challenger "must show a clear and prejudicial violation of applicable statutes." *Axiom*, 564 F.3d at 1381. A protestor "'bears a heavy burden' and the contracting officer is 'entitled to exercise discretion upon a broad range of issues.'" *Repeat Consultants Int'l, LLC v. United States*, 172 Fed. Cl. 701, 711 (2024) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332–33 (Fed. Cir. 2001)). *See also Lockheed Missiles & Space Co., Inc. v. Bentsen*, 4 F.3d 955, 958–59 (Fed. Cir. 1993) ("Effective contracting demands broad discretion."). Courts have found agency decisions to be arbitrary and capricious when the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or the decision is so implausible that it could not be ascribed to a difference in view or the product of agency experience." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Courts must also find that the challenged agency action was prejudicial to the contractor. *Bannum*, 404 F.3d at 1351. "The second step is always required before setting aside a bid award, regardless of whether the error identified at the first step was arbitrary and capricious action or, instead, a violation of law." *Sys. Stud. & Simulation, Inc. v. United States*, 22 F.4th 994, 997 (Fed. Cir. 2021). A protestor suffers prejudice upon a showing "that there was a substantial chance it would have received the contract but for that error." *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (citation omitted). In pre-award bid protests, where "the evaluation of offers has not even begun," potential bidders must show "a non-trivial competitive injury which can be redressed by judicial relief." *WinStar Comm., Inc. v. United States*, 41 Fed. Cl. 748, 763 & n.9 (1998).

Finally, the Court will "interfere with the government procurement process only in extremely limited circumstances." *CACI, Inc.-Fed. v. United States*, 719 F.2d 1567, 1581 (Fed. Cir. 1981). In application, the "arbitrary and capricious standard . . . is highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). A protestor must allege more than a *de minimis* error to obtain relief. *Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 1000 (Fed. Cir. 1996). *De minimis* errors are "so insignificant when considered against the solicitation as a whole that they can safely be ignored and the main purposes of the contemplated contract will not be affected if they are." *Id.* (citations omitted).

If there is "a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion. . . ." *Honeywell,*

*Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989). In sum, a court will not substitute its judgment for that of the agency. *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974) (citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971)).

### C. Injunctive Relief

Courts may grant injunctive relief upon a showing that "(1) the plaintiff has succeeded on the merits; (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) the public interest is served by a grant of injunctive relief." *Centech Grp.*, 554 F.3d at 1037 (citing *PGBA, LLC v. United States*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004)). While injunctive relief "is based on [the] four-factor test, a plaintiff's failure to achieve success on the merits is dispositive." *Kingfisher Sys., Inc. v. United States*, 145 Fed. Cl. 22, 34 (2019) (citing *PGBA*, 389 F.3d at 1228–29; *Career Training Concepts, Inc. v. United States*, 83 Fed. Cl. 215, 219 (2008)).

## IV. DISCUSSION

Manus contends that the VA's use of LPTA procurement procedures is arbitrary, capricious, and contrary to law. *See* Pl.'s Cross-MJAR at 8. The government presents two arguments in opposition. First, it contends that Manus lacks standing to bring a bid protest; second, it asserts that the VA's use of LPTA was lawful and reasonable. *See* Def.'s Cross-MJAR at 7, 9.

### A. Manus has Standing to Bring a Pre-Award Bid Protest because it Alleges a Non-Trivial Competitive Injury.

The government first asserts that Manus lacks standing to bring a claim because it is not an "interested party" prescribed by the Tucker Act. Def.'s Cross-MJAR at 7. The Court disagrees and finds that Manus has standing to bring this pre-award bid protest.

In addition to constitutional standing, bid protestors must establish statutory standing. *Weeks Marine*, 575 F.3d at 1358–59. Section 1491(b)(1) "imposes more stringent standing requirements than Article III." *Id.* at 1359. Bid protests must "be brought by 'interested parties.'" *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1382 (Fed. Cir. 2012) (quoting 28 U.S.C. § 1491(b)(1)). An interested party with "standing to bring a bid protest under § 1491(b)(1) is an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Percipient.AI, Inc. v. United States*, 153 F.4th 1226, 1243. In a pre-award bid protest, a protestor "must establish a non-trivial competitive injury which can be addressed by judicial relief to meet the standing requirement of § 1491(b)(1)." *Weeks Marine*, 575 F.3d at 1363. An interested party can challenge: (1) "a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award;" (2) "the award of a contract;" or (3) "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).

Manus fits the definition of a pre-award bid protest "interested party." *See Weeks Marine*, 575 F.3d at 1363 (holding "in some cases the injury stemming from a facially illegal solicitation may in and of itself be enough to establish standing; in such a case a bidder should not have to wait until the solicitation is applied unfavorably to establish injury."). *See also Percipient.AI*, 153

F.4th at 1230. In "a pre-award protest, a protestor must allege just enough facts to plausibly support the conclusion that it could have competed for and performed the procurement at issue." *Dev. Tech. Grp., Inc. v. United States*, 179 Fed. Cl. 361, 372 (2025) (citing *KL3, LLC v. United States*, 176 Fed. Cl. 657, 667 (2025). *See also Am. Relocation Connections, L.L.C. v. United States*, 789 Fed. App'x 211, 227–28 (Fed. Cir. 2019) (finding in a pre-award bid protest, that if the agency reissued a solicitation that included the required small business set aside, the protestor "would be in a better position to secure the contract.").

The government asserts that Manus "fails to allege there is anything unlawful about the VA using an LPTA approach for this procurement." Def.'s Cross-MJAR at 9. It further avers that "Manus implicitly admits that it lacks standing because it admits that it is not a competitive offeror for *any form* of LPTA procurement." *Id.* at 8 (emphasis in original). Therefore, Manus "cannot suffer any competitive injury for how an LPTA is issued." *Id.* (quoting *Weeks Marine*, 575 F.3d at 1363).

The government misstates Manus's protest. First, Manus challenges that *any* use of LPTA procedures for the sterile packs and associated services violates FAR 15.101-2(c). *See generally* First Am. Compl.; Pl.'s Cross-MJAR at 8, 10. Second, Manus claims it is prejudiced by the VA's use of LPTA because those procedures favor large enterprises with greater economies of scale. Pl.'s Cross-MJAR at 6. Further, the solicitation's lack of price, technical, and past-performance tradeoffs disadvantages Manus. Decl. of [redacted] ¶ 3, ECF No. 1-3. Manus holds the bridge contract and is an actual bidder for this solicitation. *See generally* Manus's initial proposal, Tabs 118–155, AR7752–9495. Therefore, Manus has standing to challenge the procurement.

**B. The Use of LPTA Is Arbitrary, Capricious, and Not in Accordance with Law.**

Manus asserts that the solicitation fails to meet any of the requirements of FAR 15.101-2(c). According to Manus, the CO's failure to justify the use of LPTA procedures in accordance with FAR 15.101-2(c)(6) creates a "dispositive flaw" in the solicitation. *See* Pl.'s Cross-MJAR at 9. It further contends that the solicitation fails to meet any of the remaining conditions precedent of FAR 15.101-2(c)(1)–(5). Pl.'s Cross-MJAR at 11. Further, Manus alleges that the solicitation violates each subfactor of LPTA.

The Court first addresses Manus's allegations that the solicitation generally violates FAR 15.101-2(c)(5) and (6). Then, the Court turns to Manus's contentions that individual evaluation subfactors violate FAR 15.101-2(c)(1)–(4). For the reasons stated below, the Court finds that the VA's use of LPTA was arbitrary, capricious and not in accordance with law and was prejudicial to Manus. Therefore, Manus's motion for judgment on the administrative record is **GRANTED** and the government's motion for judgment on the administrative record is **DENIED**.

**1. FAR 15.101-2(c)(5)**

To use LPTA, the acquiring agency must "ha[ve] determined that the lowest price reflects the total cost, including operation and support, of the product(s) or service(s) being acquired." FAR 15.101-2(c)(5).

Manus argues that many aspects of the solicitation do not have defined costs, and the VA has failed to account for pack credits, so the agency cannot determine what the actual lowest price

will be. Pl.'s MJAR at 32. The VA's repetition of FAR 15.101-2(c)(5) failed to explain the agency's determination on how the lowest price is calculated. *Id.* Further, the price of the contract will be based on the pack prices, and if there are changes to the packs, the CO will negotiate the price during performance and the contractor will bear the price risk. *Id.* (citing Tab 72, AR3032). However, the VA's LPTA justification says [redacted] *Id.* (quoting Tab 72, AR3036). According to Manus, the agency's determination is arbitrary and capricious because it rolls the cost of the associated services into the price of the packs. *Id.* at 32–33.

The government claims that the VA considered the cost of services and that Manus unreasonably expects the VA's cost analysis to predict future changes. Def.'s Cross-MJAR at 31–32 (citing Tab 69, AR3010–11). Accordingly, no further explanation is required. *Id.* at 32.

Here, the VA provided a conclusory statement that it [redacted] *See* Tab 69, AR3010–11. While this sentence represents its only deviation from rote repetition of the FAR 15.101-2(c) factors, *see supra* at n.2, an explanation devoid of any detail or specificity does not satisfy FAR 15.101-2(c)(5) as the government claims. *See Palantir USG, Inc. v United States*, 904 F.3d 980, 994 (Fed. Cir. 2018).

Despite this error, and perhaps highlighting it, the government's brief provides a simple, concise explanation for why the determination does not violate FAR 15.101-2(c)(5). *See* Def.'s Cross-MJAR at 32. *Cf. Mitchell Consulting Servs. Grp., Inc. v. United States*, 182 Fed. Cl. 329, 343 (2026) (quoting *Ceramica Regiomontana, S.A. v. United States*, 810 F.2d 1137, 1139 (Fed. Cir. 1987) (finding "a court may uphold an agency's decision of less than ideal clarity if the agency's path may be reasonably discerned from the record.") (citation modified)). The solicitation contemplates "any supplies or services under this contract shall be ordered by issuance of delivery orders or task orders." Tab 80, AR3112. In other words, the successful offeror would only be paid when the packs are ordered under the contract. Offerors must then price their packs based not only on the contents of each pack, but also the services provided. Therefore, the cost of the packs must include "the total cost, including operation and support, of the product(s) or service(s) being acquired." FAR 15.101-2(c)(5). Otherwise, offerors would have no way of recouping their expenses for the solicitation's "associated services." The Court finds that despite the VA's failure to explain its reasoning, the solicitation does not violate FAR 15.101-2(c)(5).

### 2. FAR 15.101-2(c)(6)

Manus asserts that the CO's failure to properly justify its decision in accordance with FAR 15.101-2(c)(6) is dispositive and bars the VA from using LPTA. *See* Pl.'s MJAR at 10. The government claims that the CO justified the use of LPTA at least three times which satisfies the requirement. Def.'s Cross-MJAR at 32–33. Upon review, the Court finds that the VA failed to properly justify its LPTA decision and violated FAR 15.101-2(c)(6).

Contracting officers must "document the contract file describing the circumstances that justify the use of lowest price, technically acceptable source selection process." FAR 15.101-2(c)(6). The administrative record "must be sufficient to permit meaningful judicial review

consistent with the Administrative Procedure Act, 5 U.S.C. § 706." *Palantir USG*, 904 F.3d at 994. "[F]or an agency action to be upheld, it must not only be explainable, it must also be explained." *Id.* (citing *Sierra Club v. Gorsuch*, 715 F.2d 653, 660–61 (D.C. Cir. 1983)). The agency "must examine the relevant data and articulate a satisfactory explanation for its actions, including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

This "statement of reasons need not include detailed findings of fact but must inform the court and the petitioner of the grounds of decision and the essential facts upon which the administrative decision was based." *Palantir USG*, 904 F.3d at 994 (quoting *Bagdonas v. Dep't of Treasury*, 93 F.3d 422, 426 (7th Cir. 1996)). Although review "under the APA is deferential, that 'does not relieve the agency of its obligation to develop an evidentiary basis for its findings.'" *Alacritech, Inc. v. Intel Corp.*, 966 F.3d 1367, 1372 (Fed. Cir. 2020) (quoting *TQ Delta, LLC v. CISCO Sys., Inc.*, 942 F.3d 1352, 1358 (Fed. Cir. 2019)). This underpins subsection (6)'s documentation requirement.

All three instances that the VA claims the CO justified LPTA are insufficient under FAR 15.101-2(c)(6). The CO first justified LPTA in the evaluation approach determination on July 16, 2024. *See* Tab 69, AR3010–11. This justification simply restates FAR 15.101-2(c)(1)–(5) but provides no explanation for its grounds. *Id.* Restating the legal standard as a conclusion does not satisfy FAR 15.101-2(c)(6). Indeed, "[c]onclusory statements, devoid of any substantive content . . . fall short of this requirement." *Serco, Inc. v. United States*, 81 Fed. Cl. 463, 497 (2008) (discussing the requirement that an agency document its reasoning in a FAR 15.308 best value trade off decision because "generalized statements that fail to reveal the agency's tradeoff calculus deprive this court of any basis upon which to review the award decisions."). Here, the VA's justification does not satisfy its FAR 15.101-2(c)(6) burden. *See Istivan v. United States*, 689 F.2d 1034, 1038–39 (Ct. Cl. 1982) (quoting *Beckham v. United States*, 392 F.2d 619, 622–23 (Ct. Cl. 1968)) (setting aside an unexplained opinion as arbitrary and capricious because "a naked conclusion and mere recitation that the opinion is based upon all of the evidence without an analysis of the evidence in writing is inimical to a rational system of administrative determination and ultimately inadequate.").

The government's second claimed justification comes from the acquisition plan dated August 26, 2024. Tab 72, AR3036. That justification goes further than the July justification by discussing how the sterile packs themselves fit the LPTA requirements. *Id.* However, the VA's statement fails to mention the associated services the VA is acquiring under Factor 2. *Id.* The Court agrees with Manus that the LPTA justification must include the associated services, and the VA once again failed to meet its burden. *See* Pl.'s MJAR at 9–10.

The government's third justification goes into greater detail, but the effect is much the same as the second's; it addressed the application of LPTA to the sterile packs themselves but ignores the associated services. *See* Tab 105, AR5767, 5771–72. This justification came as part of a corrective action in February 2026, in response to Manus's GAO protest. *Id.* The VA failed to describe the circumstances in which LPTA is justified. The solicitation requires offerors achieve

"acceptable" ratings in all six Factor 2 subcategories and the Factor 3 experience category, yet the VA makes no attempt to explain how those factors comply with FAR 15.101-2(c).

Neither the August 2024 nor March 2026 justifications explain the VA's reasoning for using LPTA. *Palantir USG*, 904 F.3d at 994. *See also Ala. Aircraft Indus.*, 586 F.3d at 1375. Instead, the government attempts to shift the burden onto Manus to explain why all solicitation factors must meet FAR 15.101-2(c). Def.'s Cross-MJAR at 35. This fails. An agency's "failure to explain why the evidence in the record is sufficient to provide a reasonable basis for" its decision is insufficient. *Stratton v. Sec'y of Health and Human Servs.*, 138 F.4th 1368, 1372 (Fed. Cir. 2025) (applying the § 706(A) standard to National Childhood Vaccine Injury Act claim decisions by the Office of Special Masters). Therefore, the VA violated FAR 15.101-2(c)(6). The VA's failure to document its reasons for using LPTA compounds its other violations of FAR 15.101-2(c).

Although the solicitation violates FAR 15.101(2)(c)(6), which renders the use of LPTA unlawful, this error does not prejudice Manus. *See WinStar Comm.*, 41 Fed. Cl. at 763 (holding an error in a pre-award bid protest is prejudicial if it causes a nontrivial competitive injury). Manus does not allege that the failure to justify itself causes its injury, but that failure makes the VA's use of LPTA illegal. Taken alone, this is a *de minimis* error. *See Grumman Data Sys.*, 88 F.3d at 1000. The Court does not find that the VA's failure to justify its use of LPTA procedures caused Manus a competitive injury.

The Court now looks to Manus's challenges to the VA's LPTA decision on the remaining FAR 15.101-2(c) requirements. *See* Pl.'s MJAR at 11–32. For multiple reasons, Manus argues that various subfactors of Factor 2 and Factor 3 do not satisfy LPTA. *Id.*

### 3. All Technical Aspects of an LPTA Solicitation Must Meet FAR 15.101-2(c)(1)–(4) Subfactors.

As a threshold matter, the Court addresses the government's argument that not all aspects of a solicitation must meet the FAR 15.101-2(c) requirements. *See* Def.'s Cross-MJAR at 35. The government is mistaken. From the plain language of the FAR, solicitations must meet *all* six factors of FAR 15.101-2(c) to use LPTA procedures. *See SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 866 (Fed. Cir. 2004) (holding the term "and" "connotes a conjunctive list."). In fact, this solicitation requires that the offerors achieve "acceptable" ratings on *all* six technical subfactors in Factor 2. *See* Tab 80, AR3160–61. Therefore, the Court reviews all of Manus's challenges to the individual subfactors. *See Coast to Coast Comput. Prods., Inc.*, B-419624.2, 2021 WL 2657991 (Comp. Gen. June 28, 2021) (GAO decision applying the technical factors of the solicitation to the LPTA factors). *Cf. Anders Constr., Inc. v. United States*, No. 2024-2247, 2026 WL 1298183 at *5 (Fed. Cir. May 12, 2026) (instructing the court to review all of plaintiff's challenges to an LPTA procurement despite finding plaintiff's bid to be technically unacceptable).

#### a. Subcontracting Plan

The Court first addresses the subcontracting plan requirement. Manus claims that the solicitation's subcontracting plan violates FAR 15.101-2(c)(1), (3), and (4) because the requirement that offeror's justifications for deviating from the VA's stated subcontracting goals

would be evaluated for "reasonableness" is "an inherently subjective standard" incompatible with a binary acceptability determination required by LPTA. See *Pl.*'s MJAR at 15, 24, 30. The government asserts that Amendment 11 to the solicitation, which removed the reasonableness requirement, moots Manus's objections. *See* Def.'s Cross-MJAR at 15; Tab 156, AR9496.

Manus argues that "[s]ubsequent events are irrelevant" to prejudicial errors extant at the time of protest. *Oracle Am. Inc. v. United States*, 975 F.3d 1279, 1292 n.4 (Fed. Cir. 2020) (pre-award bid protest, discussing a bidder removed for ineligibility that later became eligible, does not make an agency action prejudicial). Instead, allowing agencies to "invoke belated justifications . . . can upset 'the orderly functioning of the process of review' [] forcing both litigants and the courts to chase a moving target." *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 23 (2020) (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943)).

Manus's argument fails. Agencies may undertake unilateral corrective action. *Syrenen Techs. Corp. v. United States*, 166 F.4th 1040, 1045 (Fed. Cir. 2026).[3] Courts must review new decisions from partial corrective action, which may moot a challenge. *Massman Constr. Co. v. United States*, 182 Fed. Cl. 357, 368–69 (2026) (finding partial corrective action removed any prejudice and mooted part of a protestor's complaint). *Cf. Nat'l Air Cargo Grp., Inc. v. United States*, 127 Fed. Cl. 707, 717 (2016) (finding an "initial procurement decision will continue to present a live controversy to the extent errors in the original evaluation have gone unresolved during corrective action). Here, the corrective action removed the small business subcontracting plan from the technical evaluation. Tab 156, AR 9497. This change moots Manus's challenge to it under FAR 15.101-2(c)(1), (3), and (4).

Manus also protests the requirement that offerors' small business subcontracting plans comply with FAR 52.219-9. Pl.'s Resp. & Reply at 23–24. This requirement is unchanged from the original solicitation terms. *See* Tab 80, AR3149. Manus did not raise this until its reply brief and so waives this argument. *Novosteel SA v. United States*, 284 F.3d 1261, 1273–74 (Fed. Cir. 2002) (holding that an argument raised in a reply brief is "waived . . . by not presenting it in the principal brief.").

The Court now turns to Manus's allegations that individual subfactors of the solicitation violate provisions of FAR 15.101-2(c)(1)–(4).

**b. FAR 15.101-2(c)(1)**

Lowest price, technically acceptable procurement procedures may be used if "[t]he agency can comprehensively and clearly describe the minimum requirements in terms of performance objectives, measures, and standards that will be used to determine the acceptability of the offers." FAR 15.101-2(c)(1). Here, Manus alleges the solicitation's Transition Plan (Factor 2(a)), Web-Based System (Factor 2(b)), EDI (Factor 2(c)), and the Small Business Subcontracting Plan (Factor 2(f)) do not meet the requirements of 15.101-2(c)(1). Pl.'s MJAR at 11–16. Manus's challenge to the small business subcontracting plan is moot, *see supra* at section IV(B)(3)(a), so the Court

[3] The Federal Circuit is clear that *Regents* applies only to rulemaking, not to procurement decisions. *Syneren Techs.*, 166 F.4th at 1045.

addresses solicitation factors 2(a)–(c) only. The Court finds that only the web-based system subfactor violates FAR 15.101-2(c)(1).

The solicitation requires that offerors provide a web-based system for electronic communication through an electronic data interchange for inventory tracking. Tab 113, AR6874. The system "shall provide for easy identification of component, product utilization, latex, sterilization requirements, country of origin information, and VA standardization information." *Id.* Manus argues that the solicitation fails to identify what requirements the VA will use to evaluate acceptability. Pl.'s MJAR at 12–13. The VA does not provide guidance on what constitutes "easy identification." *Id.* at 13. In its market research, the VA [redacted] *See* Tab 26, AR 286–87 (research on [redacted]; Tab 20, AR118–22 (research on [redacted])[4]; Tab 29b, AR476–81 (research on [redacted]). In other words, the VA understands [redacted] but uses undefined subjective terminology in place of objective criteria. Pl.'s MJAR at 13.

The government asserts that the VA does provide the minimum acceptability requirements for what information the web-based system must provide. Def.'s Cross-MJAR at 13. Further, despite [redacted] there is no requirement for such a platform. *Id.*

The web-based system requirement violates FAR 15.101-2(c)(1). While "easy identification" is undefined, the procurement officers retain some measure of discretion, even in LPTA procurements. *See Anders Constr.*, 2026 WL 1298183 at *2 (citing *E.W. Bliss*, 77 F.3d at 449). Statement of work ("SOW") section 14.1 describes what information must be easily identifiable in the web-based system. Tab 113, AR6874. Manus claims that offerors' different systems "mak[e] it apparent that the these are not the types of services that can be distilled into identifiable standards appropriate for an LPTA evaluation." Pl.'s MJAR at 13. A contracting officer *might* have shown a reasonable basis for whether the information required is easily identifiable. *See Banknote Corp. of Am.*, 591 F.3d at 1377. However, there is nothing for the Court to defer to here, but its failure to explain its reasoning means that the VA's limited discretion in LPTA procurements does not save its decision. *See e.g. Palantir USG*, 904 F.3d at 994. *See also Coast to Coast Comput. Prods., Inc.*, 2021 WL 2657991 at *3 (GAO decision holding that determination of an agency's needs are within its discretion, but that discretion must be justified, and the "adequacy of the agency's justification is ascertained through examining whether the agency's explanation is reasonable.").

Turning to the draft transition plan and the electronic data interchange, factors 2(a) and (c), Manus's claims amount to little more than speculation. The transition plan requires that offerors "[provide] a *draft transition plan* demonstrating how the Offeror will *transition* each VISN within 120 days after the date of contract award/effective date in accordance with section 12. Transition of the SOW." Tab 80, AR3162 (emphasis in original). The draft transition plan must "include a

---

[4] Manus claims that the VA's market research identified [redacted] *See* Pl.'s MJAR at 13, 18, 23, 28. However, it was [redacted] *See* Tab 20, AR121–22.

project management plan that demonstrates significant milestones." *Id.* Manus contends that this provides no guidance on what constitutes a significant milestone and how the VA will compare plans. Instead, Manus asserts that plans will be so different that the VA could not possibly compare them. The VA provided grounds for its future decision and Manus provided no grounds for showing the decision would not have a rational basis which conforms with the requirements of FAR 15.101-2(c)(1).

Manus's argument against the EDI requirement similarly fails. The necessary requirements for a fully functioning EDI are laid out in SOW 14.2. Section 14.2 requires the EDI be ready with 30 days of the start of performance and be capable to "process EDI orders and acknowledge orders in accordance with ANSI ASC X.12M Supply Chain Standard Transaction sets." *See* Tab 113, AR6874–77. Manus instead claims that offers will be of "varying levels of detail" with "different ways of achieving EDI within thirty (or 120) days of award." This is more speculation, and Manus fails to show a clear and prejudicial violation of FAR 15.101-2(c)(1).

**c. FAR 15.101-2(c)(2)**

To utilize LPTA procedures, agencies must "realize no, or minimal, value from a proposal that exceeds the minimum technical or performance requirements." FAR 15.101-2(c)(2). Manus alleges that the solicitation's transition plan, web-based system, and EDI technical factors and the experience factor provide little more than subject minimum requirements, and violate this provision of the FAR. Pl.'s MJAR at 16.

The government asserts that Manus's complaints with the FAR 15.101-2(c)(2), that the government would realize greater value from a proposal which exceeds the solicitations minimum requirements, are meritless. Def.'s Cross-MJAR at 15–16. It points to *In re Brainerd Helicopters, Inc., d/b/a Firehawk Helicopters*, in which the GAO rejected a disappointed bidder's contention that the U.S. Forest Service would realize more than a minimum value for payloads which exceed the standard minimum payload requirements for helicopter firefighting services, as stated in the solicitation. No. B-420950, 2022 WL 17225273 *1, 5–6 (Comp. Gen. Nov. 18, 2022). There, GAO found "no merit in the protestor's contention that offering additional helicopter payload services necessarily provides additional benefits to the agency." *Id.* at *8. Further, there was "no basis to question the agency's determination that providing additional [technical capability] beyond" the Federal Aviation Administration ("FAA") and international operation standards required by that RFP, would be difficult to quantify. *Id.* In short, complicated requirements do not preclude LPTA procedures. *Id.*

The Court finds *Brainerd* helpful, but not instructive, in determining whether the agency cannot realize greater value from an offer which exceeds the minimum requirements. *See Consol. Eng'g Servs., Inc. v United States*, 64 Fed. Cl. 617, 623 (2005) (holding that GAO decisions are treated with a high degree of deference, especially in the instant or similar solicitations, but the Court of Federal Claims is not bound by them). However, when the "issue is a question of law, it is for the court to decide, and no deference need be given to the decision at the GAO." *Grunley Walsh Intern., LLC v. United States*, 78 Fed. Cl. 35, 39 (2007) (citing *Metcalf Constr. Co. v. United States*, 53 Fed. Cl. 617, 626 n.17 (2002)).

Here, the Court finds that the transition plan violates FAR 15.101-2(c)(2), but the web-based system, EDI, and experience factors do not.

Manus asserts that the VA cannot claim that it would realize no more than minimum value from a transition plan proposal that is completed in less than 120 days. Pl.'s MJAR at 16. The VA describes the transition plan as one of "size and complexity," which makes LPTA procurement procedures inappropriate. Pl.'s MJAR at 16 (quoting Tab 113, AR6873). Further, Manus claims that offerors "were expressly encouraged to submit transition plans that *exceed* the Solicitation's minimum requirements." *Id.* at 17 (emphasis in original). The government argues that complexity does not preclude LPTA. Def.'s Cross-MJAR at 17 (citing *Brainerd Helicopters*, 2022 WL 17225273 at *7–8).

First, Manus repeatedly claims that the solicitation encourages or instructs offerors to exceed the minimum requirements. *See e.g.* Pl.'s MJAR at 17, 27. Not so. "Meet or Exceed" is not a directive of this solicitation, it is language of the FAR itself. *See* FAR 15.101-2(b)(1) (LPTA "Solicitations shall specify that award will be made on the basis of the lowest evaluated price of proposals *meeting or exceeding* the acceptability standards for non-cost factors.") (emphasis added). The Court must give meaning to all parts of a statute. *See Buckley v. United States*, 51 Fed. Cl. 174, 192 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 404 (2000) (holding that when interpreting a statute, "it is the court's duty . . . to give meaning to every clause or word of the statute."). Here, the Court does not construe "meet or exceed" to mean an offeror is directed to exceed the minimum requirements. Instead, the Court finds the language to mean that offers which exceed the minimum requirements should not be discarded. Otherwise, there would be a conflict between "minimum" and "exceeds." *See Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 100 (2012) (quoting *FTC v. Mandel Bros., Inc.*, 359 U.S. 385, 389 (1959)) (holding that when statute may be interpreted such that it conflicts with other statutes, a court's role "is to fit, if possible, all parts [of the statutory scheme] into a harmonious whole.").

Second, despite finding that "meet or exceed" is not a directive, Manus's argument that the government would not find value in a plan that exceeds the minimum requirements succeeds. The solicitation requires the successful offeror to "transition each VISN within 120 days of the contract award date." Tab 80, AR3162. The Acquisition Plan makes clear why the VA chose 120 days: the bridge contract would expire on March 31, 2025, and if the successful offeror could not meet the 120-day implementation period, its "[f]ailure to provide packs on a timely basis can affect scheduled surgeries resulting in delayed and/or cancelled procedures." Tab 72, AR3028.

Agencies are granted significant deference in their decisions, *Lockheed Missiles & Space*, 4 F.3d at 958–59, and their decisions cannot be overturned for a mere difference in opinion. *Ala. Aircraft Indus., Inc.-Birmingham*, 586 F.3d at 1375. Here, however, the VA clearly identified the harms which would result from a transition exceeding 120 days, but then says, without reasoning, that it would receive no value from a transition plan which could be completed in less time. Tab 72, AR3028, 3036; Tab 69, AR3010–11; Tab 105, AR5771–72. The VA's market research [redacted]. *See e.g.*, Tab 27, AR309; Tab 27a, AR342.

The Court cannot vouchsafe the VA's decision to use LPTA here. The government's reliance on *Brainerd Helicopters* does not help it. There, the Forest Service relied on FAA and international safety standards for helicopter operations. 2022 WL 17225273 at *5–6. The VA does not have similar standards to mitigate the alleged risks here. The risks—delayed surgeries for veterans—are grave; plans which exceed VA's minimum requirement would clearly provide more than a minimum value to the agency, and the VA offers no explanation for its decision for the Court to defer. *See Palantir USG*, 904 F.3d at 994. The solicitation's transition plan, factor 2(a), violates FAR 15.101-2(c)(2).

Manus also contends that the web-based system, EDI, and the experience factors violate FAR 15.101-2(c)(2). They do not. Manus claims the VA would "certainly achieve 'more timely medical supplies'" from a user-friendly web-based system and repeats its contention that the "meet or exceed" language of the solicitation is an explicit invitation to exceed the minimum requirements. Pl.'s MJAR at 18; Pl.'s Resp. & Reply at 12. Manus has not shown error, only speculation that because the solicitation contains meet-or-exceed language, the agency must recognize potential value in offers which exceed the minimum requirements based on offerors' descriptions of their products. *See* Tab 20, AR122. For the EDI, Manus provides a hypothetical EDI plan that describes the implementation plan step-by-step, describes the necessary hardware and software, and has a twenty-day implementation deadline. Pl.'s MJAR at 19. Because the EDI must be active for all VISNs within 120 days of award, an EDI plan which is implemented faster than 120 days would provide the VA with "greater confidence that pack orders will be timely processed." *Id.* But there is no "greater confidence" standard offerors must meet. Manus once again alleges speculation couched as fact. The EDI subfactor does not violate FAR 15.101-2(c)(2).

The solicitation requires that bidders have experience delivering a minimum of 100 different pack combinations to at least twenty VAMCs. Tab 80, AR3163. Manus claims that experience on a contract one-quarter the size of the instant contract "cannot rationally be considered similar." Pl.'s MJAR at 20. The VA cannot reasonably claim that "it would not hold greater confidence, and therefore, be provided significant value from, a technical proposal which demonstrates a contractor's ability" to deliver over 400 custom packs to twenty-five VAMCs. *Id.* The government characterizes Manus's claims as unsupported conjecture. Def.'s Cross-MJAR at 20. It is. Manus has not met its burden to show significant error, instead it attempts to gold plate requirements which would then favor its experience as the bridge contract holder. Manus fails to show that the experience requirement violates FAR 15.101-2(c)(2).

**d. FAR 15.101-2(c)(3)**

To use LPTA procedures, agencies must "believe[] the technical proposals will require no, or minimal, subjective judgment by the source selection authority as to the desirability of one offeror's proposal versus a competing proposal." FAR 15.101-2(c)(3). Manus asserts the transition plan, web-based system, EDI, small business subcontracting plan, and experience factors violate this provision. Pl.'s MJAR at 21. For the reasons stated above, Manus's challenge to the small business subcontracting plan is moot. *See supra* at § IV(B)(3)(a). The Court addresses the remaining factors in turn and finds that only the web-based system subfactor violates FAR 15.101-2(c)(3).

Manus argues that the VA "will need to utilize more than minimal subjective judgment when reviewing proposals to determine whether a [web-based] system easily identifies pack characteristics," thus precluding LPTA procedures. Pl.'s MJAR at 22–23. Here, offerors must achieve an undefined subjective standard, the web-based system must easily identify the pack, while the market research indicates there are subjective criteria that the VA preferred. There can be no sure way to measure the agency's judgment, even when it simply states that this is an objective, binary choice. And this provision of the FAR expressly limits the discretion agencies typically have in procurement decisions. *Cf. Lockheed Missiles & Space Co.*, 4 F.3d at 958–59. *See also Fond du Lac Band of Lake Superior Chippewa v. Wheeler*, 519 F. Supp. 3d 549, 566 (D. Minn. 2021) (discussing *Webster v. Doe*, 486 U.S. 592 (1988), finding a "statute that conditions an agency action on an administrator's subjective judgment" is inherently discretionary under the APA). The agency's failure to explain its decision to use LPTA vis-à-vis the web-based system does not allow the Court to accept the VA's judgment here. Therefore, this provision violates FAR 15.101-2(c)(3).

Manus's challenges to the transition plan and EDI, however, rely on hypotheticals and speculation that the VA *will* use more than minimal subjective judgment. Manus claims that "it is irrational to think that the source selection authority will not make subjective judgments between" different transition plans with varying detail. *See* Pl.'s MJAR at 21. Manus contends that shorter transition timelines equate to greater confidence, which would be more desirable, thus the VA must use more than minimal subjective judgment when evaluating offerors' plans. *Id.* at 22. Same with EDI. Manus asserts that its EDI, which it believes it will describe in such detail that it "will certainly be more desirable" than other EDI proposals, will require the VA to use more than a minimal subjective judgment. Pl.'s MAJR at 23–24. In short, Manus alleges that the VA will violate the terms of the solicitation in the future. Manus does not meet its burden to show that either the transition plan or the EDI subfactors violate FAR 15.101-2(c)(3).

Finally, turning to Manus's claim that an offeror with experience like Manus's would be more desirable than offerors that meet the solicitation's minimum requirement. Pl.'s MJAR at 25. The government argues that experience is a non-price factor, not a technical factor and FAR 15-101.2(c)(3) and (4) are limited to the technical proposals because they include the term "technical proposal." Def.'s Cross-MJAR at 24; FAR 12.101-2(c).

When Congress uses different language in two different subsections, courts may not assume the differing language has the same meaning. *Russello v. United States*, 464 U.S.16, 23 (1983). *See also Chafin v. Off. of Pers. Mgmt.*, 177 F.4th 1183, 1187 (Fed. Cir. 2026) (holding that almost identical language in two provisions of a statute cannot mean the same thing where one provision includes a word or phrase which other omits). The Court must read the language as limiting sections (c)(3) and (c)(4) to the technical proposals. *Russello*, 464 U.S. at 23 (holding that courts must generally "presume[] that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). Therefore, the Court finds that these provisions do not apply to the solicitation's experience factor.

**e. FAR 15.101-2(c)(4)**

Next, to use LPTA procedures, the agency must have "a high degree of confidence that reviewing the technical proposals of all offerors would not result in the identification of characteristics that could provide value or benefit to the agency." FAR 15.101-2(c)(4). Manus challenges the transition plan, web-based system, EDI, small business subcontracting plan, and experience factors as violating this provision of the FAR. For the reasons stated above, Manus's challenge to the small business subcontracting plan is moot. *See supra* at § IV(B)(3)(a). Further, for the reasons stated in section IV(B)(3)(d), *supra*, experience is not a technical factor and therefore this section does not apply. Accordingly, the Court's analysis is limited to the transition plan, web-based system, and EDI subfactors. For the foregoing reasons, the Court finds that only the web-based system violates FAR 15.101-2(c)(4).

Manus contends that the VA would find some value in a web-based system which exceeds the minimum requirements of the solicitation. In its argument, Manus identifies characteristics which could provide value to the agency, including noting that [redacted] *See* Pl.'s MJAR at 28 (citing Tab 20, AR 120–22) (the VA's market research [redacted]. The government again asserts that Manus has failed to identify any "characteristics" which could provide benefit or value to the agency. Def.'s Cross-MJAR at 28. Further, discussion of finding "nominal value from a proposal that exceeds the minimum technical or performance requirements" falls under the government's FAR 15.101-2(c)(2) justification, which, of note, was limited to the sterile packs themselves. *See id.* (citing Tab 72, AR3036). Here, the VA's blanket regurgitation of the LPTA standard does not cure the fact that its research identified different, subjective characteristics of web-based systems. *Istivan*, 689 F.2d at 1038–39. The VA offers no justification as to why this does not matter, leaving the Court little on which to defer to the agency's discretion. Therefore, the Court finds that the web-based system subfactor violates FAR 15.101-2(c)(4).

Manus asserts that "it is irrational" for the VA to claim that it has a high degree of confidence that different transition plans with different milestones could not provide value to the agency." Pl.'s MJAR at 27. However, Manus again fails to identify what those characteristics are other than the timeline. The VA determined 120 days was sufficient and Manus identifies nothing other than a potentially early transition here. The Court sees no reason to hem the VA's statutory discretion here. *Compare* FAR 15.101-2(c)(3) (language limiting an agency's subjective judgment) *with* (c)(4) (no such language limiting an agency's subjective judgment). Manus's allegation that something can be done quicker than needed does not make the agency's longer timeline "irrational."

Manus's claim that the VA would benefit from shorter timelines and additional EDI capabilities beyond what is in section 14 of the SOW fails to show an inconsistency with FAR 15.101-2(c)(4). The VA contemplated differing timelines and chose 30 days as sufficient. This decision falls within its discretion. Manus's allegation boils down to speculation that offerors could provide more than required by the solicitation. This "more" would then be so much better than what the agency contemplated in its requirements, that the agency must violate law by not considering it. Manus does not point to any gaps in the agency's requirements, only that the VA

is risking unsuccessful performance by not considering some unidentified yet highly important EDI characteristics. *See* Pl.'s MJAR at 29–30. Put differently, Manus provides nothing to show that the EDI requirement violates FAR 15.101-2(c)(4).

In sum, the custom sterile pack solicitation violates FAR 15.101-2(c)(1)–(4), and (6). However, the Court's inquiry does not end here. Manus must show that the VA's violation of the FAR by using LPTA will prejudice it in the competition.

**C. Manus Demonstrates Use of LPTA is Prejudicial.**

To demonstrate prejudice, Manus must show that it suffered "a non-trivial competitive injury which can be redressed by judicial relief." *WinStar Comm.*, 41 Fed. Cl. at 763. Manus claims it is prejudiced by the solicitation because LPTA procedures favor "larger competitors who have greater economies of scale and who can offer lower prices." Pl.'s MJAR at 35. However, "[h]ad the solicitation properly included a price, technical, and past performance tradeoff evaluation as required by the FAR," Manus contends it would offer significant nonprice benefits. *Id.* The government asserts that because Manus argues it would not be competitive in an LPTA procurement, it therefore admits it is not prejudiced. Def.'s Cross-MJAR at 36–37.

To suffer a non-trivial competitive injury, a prospective bidder "must at least be qualified to compete for the contract it seeks." *CliniComp Int'l, Inc. v. United States*, 904 F.3d 1353, 1359–60 (Fed. Cir. 2018). Manus is qualified to compete for the custom sterile pack solicitation. It holds the current bridge contract. Further, if the VA used proper procurement procedures, Manus "would be in a better position to secure the contract" because it would be competitive against larger offerors if the solicitation used a price, technical, and past performance trade-off procedure. *See Am. Relocation Connections, L.L.C.*, 789 Fed. App'x at 227–28; Pl.'s MJAR at 35. Therefore, the Court finds that the VA's improper use of LPTA prejudices Manus.

**D. Injunctive Relief is Warranted.**

Manus moves for permanent injunctive relief. Pl.'s MJAR at 36. In "bid protest case[s], the Court of Federal Claims 'may award any relief that the court considers proper, including declaratory and injunctive relief.'" *Oak Grove*, 116 F.4th at 1375 (quoting 28 U.S.C. § 1491(b)(2)). To award injunctive relief, the Court must consider whether "(1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief." *Oak Grove*, 116 F.4th at 1375 (quoting *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (internal quotation marks omitted)).

First, the VA's use of LPTA procurement procedures is arbitrary, capricious, and contrary to law. Manus has therefore succeeded on the merits. *See Kingfisher Sys.*, 145 Fed. Cl. at 34. Second, Manus claims it will suffer irreparable harm if the Court does not grant the permanent injunction because it could not meaningfully compete for the custom sterile pack procurement in an LPTA competition. Pl.'s MJAR at 37. The solicitation has a maximum ceiling of $98,500,000, which presents a significant business opportunity to Manus. *Id.* Manus has invested $[redacted] and [redacted] hours in preparing its proposal and another $[redacted] in protests at GAO. *Id.* at 36.

Without a permanent injunction, Manus will lose profits and "significant past performance and experience." *Id.* at 37. Manus will suffer irreparable harm if an injunction is not granted. *See Brasfield & Gorrie, LLC v. United States*, 179 Fed. Cl. 509, 539 (2025) (quoting *Palantir USG, Inc. v. United States*, 129 Fed. Cl. 218, 292–93 (2018) *aff'd* 904 F.3d 980 (Fed. Cir. 2019)) ("The loss of the contract represents not only irreparable injury in terms of lost potential profit, but also in terms of lost experience and opportunity to work.").

Third, the harm to Manus outweighs the harm to the government. Without relief, Manus would suffer the loss of a significant business opportunity, potential profits, and experience. Pl.'s MJAR at 37. Manus asserts that the government would suffer minimal, if any, harm because it could continue ordering the sterile packs through the bridge contract. *Id.*

Finally, Manus argues that ensuring the VA "properly follows applicable statutes, including those intended to further fair and equitable competition in government contracting" serves the public interest. *Id.* The Court agrees. *See Brasfield*, 179 Fed. Cl. at 539. "It is axiomatic that the public has an interest in honest, open, and fair competition in the procurement process." *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 266, 268–69 (1997). Whenever a plaintiff "is improperly excluded from that process, that interest is compromised." *Id.* (citing *Magellan Corp. v. United States*, 27 Fed. Cl. 446, 448 (1993)). It is "well established that there is an overriding public interest in preserving the integrity of the federal procurement process by requiring government officials to follow procurement statutes and regulations." *LABAT-Anderson, Inc. v. United States*, 65 Fed. Cl. 570, 581 (2005) (internal citations omitted).

## V. CONCLUSION

Based on the foregoing, the Department of Veterans Affairs' use of LPTA procedures in the custom sterile pack solicitation is arbitrary, capricious, and contrary to law. The VA is required to reissue the solicitation; either properly justifying LPTA procedures or by using a legally appropriate contracting method.

The Court will hold a telephonic status conference on **Thursday, October 8, 2026, at 3:00 PM ET** for the parties to apprise the Court of a timeline for proposed redactions to this opinion and the parties' views on injunctive relief.

**IT IS SO ORDERED.**

s/ Loren A. Smith

Loren A. Smith,
Senior Judge